

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2006

# Saleh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Saleh v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1359.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1359

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2258

_____

NAGY LOTFY SALEH;
SOAD SABRY ELGABALAWY;
ANN NAGY SALEH,

Petitioners

v.

ALBERTO GONZALES, Attorney General
of the United States,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A79-307-499; A79-307-500; and A79-307-501)

_____

Argued on September 22, 2005


BEFORE:  ROTH, MCKEE and FISHER, Circuit Judges

(Opinion filed March 31, 2006)


_____

        *Attorney General Alberto Gonzales has been substituted for former Attorney
General John Ashcroft, the original respondent in this case, pursuant to Fed.R.App. 43(c).

A. Mehira Gilden, Esquire (ARGUED)
16 East 34th Street
16th Floor
New York, NY   20016

Counsel for Petitioners

Peter D. Keisler, Esquire
Assistant Attorney General
Civil Division
Christopher C. Fuller, Esquire
Senior Litigation Counsel
Office of Immigration Litigation
Justin A. Salvage, Esquire (ARGUED)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resource Division
U. S. Department of Justice
P. O. Box 7611
Ben Franklin Station
Washington, D.C.   20044

Lyle D. Jentzer, Esquire
Douglas E. Ginsberg, Esquire
U. S. Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, D.C.   20044

Counsel for Respondent

---

O P I N I O N

---

**ROTH**, Circuit Judge

## I. Background and Procedural History

Because the parties are familiar with the facts and procedural posture, we will provide only a brief synopsis of the events leading up to this appeal.

Nagy Lotfy Saleh and his family are citizens of Egypt. He, his wife, Soad Sabry Elgabalawy, and daughters, Ann and Pauline Saleh, entered the United States in April, October, and December of 2000 under non-immigrant visas. Saleh, the lead applicant for asylum, was an inspector for the Egyptian Education Ministry. His wife, Elgabalawy, a former employee of the Egyptian Interior Ministry, and his minor daughter, Ann, are derivative applicants. After their respective visas expired, Saleh filed an application for asylum and withholding of removal, as well as for protection under the Convention Against Torture.

The Salehs are devout Evangelical Protestants who actively practice their religion and did so in Egypt. Saleh and Elgabalawy were involved in a Christian radio show in Egypt and Elgabalawy wrote at least one scholarly work on Christian theology. Additionally, the Salehs visited Christian prisoners at an Egyptian jail. In August of 1999, the Salehs received a phone call from prison officials that an inmate was being paroled and had no place to go. Although the Salehs did not know precisely what the woman's crimes were, they took her into their home because they believed it was their duty as Christians. Approximately two months later, Saleh came home and discovered that the former inmate

3

was actually a spy working for the Egyptian government. According to Saleh, she was attempting to learn about the Salehs' Christian activities. After Saleh's discovery, the woman told him that, although she was actually Muslim, she wished to convert to Christianity. As a result, Saleh took her to a convent for Christian nuns. It appears that she ran away from that location and has not been heard from since.

Saleh asserts that, on his return from the convent, Egyptian secret service members arrested him, took him to a government building, and tortured him for two weeks. After he was released, Saleh took a cab home and may or may not have received medical attention. No medical evidence, other than Saleh's own testimony, was introduced at the hearing before the Immigration Judge (IJ). During Saleh's incarceration, Elgabalawy did not report him missing or attempt to ascertain his whereabouts because she believed that nothing could be done.

After he was released, the Salehs were threatened by an Islamic terrorist group known as Gama'at Al Islamiya, which began calling their home and making threats. There is some uncertainty as to whether the threats were directed at Saleh himself or at the whole family. Saleh initially testified that the threats where directed toward the whole family but later stated that they were actually directed only at himself.

Saleh left Egypt for the United States about five months after being released. His wife and daughters followed six and eight months after that. The Salehs still own their home in Egypt, and their relatives visit it from time to time. Prior to their departures, the

4

Salehs kept their respective jobs with the Egyptian government.

On November 6, 2002, the IJ issued an oral decision denying Saleh's asylum petition and, derivatively, Elgabalawy's and Ann's as well. The IJ found that the Salehs were not credible and that they failed to prove they were persecuted on the basis of their religion. The Salehs appealed to the Board of Immigration Appeals (BIA), which issued a written order and opinion adopting and affirming the IJ's denial of asylum and withholding of removal. The Salehs then petitioned this Court for review of that decision.

## II. Jurisdiction and Standard of Review

The BIA had jurisdiction over this matter under 8 C.F.R. § 1003.1(b)(3), which grants the BIA jurisdiction over decisions of immigration judges in removal cases. We have jurisdiction to review a determination of the BIA under section 242(a)(1) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1252(a)(1).

We review the decision of both the BIA and the IJ where, as here, the Board adopts findings of the IJ and discusses the underlying bases for those findings. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). If the BIA's denial of asylum and withholding of deportation is supported by "substantial evidence" we must honor that conclusion. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). The substantial evidence standard is deferential to the BIA's determination and we will overturn it only if the evidence in the record compels a conclusion contrary to that reached by the BIA. Id. at 483-84.

5

## III. Analysis

An alien is entitled to a discretionary grant of asylum if he is a "refugee" within the meaning of the INA. <u>Fatin v. INS</u>, 12 F.3d 1233, 1238 (3d Cir. 1993). The Act defines "refugee" as one who is "unable or unwilling" to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). The applicant must genuinely fear persecution and must provide credible and specific evidence that the fear is objectively reasonable. <u>Lusingo v. Gonzales</u>, 420 F.3d 193, 199 (3d Cir. 2005).

The INA provides for withholding of removal under 8 U.S.C. § 1231(b)(3). An alien may not be removed if "the alien's life or freedom would be threatened...on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion." <u>Id.</u> The standard for withholding removal is stricter than for asylum and requires that the alien demonstrate "a clear probability" of persecution should he be returned to his native country. <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 429, 448 (1987). If an alien cannot show that he is a "refugee" under 8 U.S.C. § 1101(a)(42)(A), then he will not be entitled to withholding of removal because the latter requires a greater likelihood of future persecution. <u>Chen v. Ashcroft</u>, 376 F.3d 215, 223 (3d Cir. 2004).

An adverse credibility determination may not be rejected unless no reasonable person would have found the applicants not credible. <u>He Chun Chen v. Ashcroft</u>, 376 F.3d

6

215, 222 (3d Cir. 2004). In this case, despite the IJ's at times inappropriate behavior, we cannot say that any reasonable adjudicator would be compelled to conclude that the Salehs were credible. Likewise, we find that there is substantial evidence, viewing the record as a whole, to support the IJ's adverse credibility determination. The Salehs provided inconsistent testimony concerning the nature and scope of the threats from Gama'at Al Islamiya. Saleh vacillated between saying that the threats were directed to the entire Saleh family and that they were directed only toward him personally. This distinction goes to the plausibility of the Salehs' claim of persecution because, if the threats were directed at the entire family, it is less plausible that Saleh would have left for the United States without his wife and children. The IJ was also moved by the Salehs' unexplained delay between the alleged torture of Saleh and the family's eventual departure from Egypt. Implausibility is a valid basis upon which to rest an adverse credibility determination. Berishaj v. Ashcroft, 378 F.3d 314, 324 (3d Cir. 2004).

The IJ also found that Saleh's story concerning the woman from the prison was not plausible. While we do not find it inherently implausible that a devout Christian family would take in a former prisoner they had previously worked with, the lack of any corroborating evidence and other inconsistencies in the Salehs' testimony prevent us from rejecting this as another indicia of substantial evidence. While we recognize the difficulty of requiring supporting evidence in cases alleging persecution, there are times, particularly in light of testimonial inconsistences, when the lack of corroborating evidence can itself

7

provide support for an adverse credibility determination. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). In this case, the absence of any supporting documentation for medical treatment following Saleh's two week confinement and torture, as well as the failure to provide any testimonial or documentary support from church members, relatives, or neighbors that a former inmate lived in the Salehs' home, provides additional evidence upon which we base our conclusion that substantial evidence exists to support the determination of the BIA.

While we will affirm the BIA in this case, we would be remiss were we not to point out the unprofessional and inappropriate conduct of Judge Garcy, the IJ in this case. On numerous occasions the Judge verbally attacked Mr. Saleh in a manner unbecoming of a neutral and detached arbitrator.[1] Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003). The Judge also displayed a callousness toward the Salehs' situation that was unwarranted, even assuming they were not being totally forthcoming. The Judge repeatedly referred to the family as acting in a "leisurely" manner following Mr. Saleh's alleged torture. A.R. 118. Judge Garcy also berated Saleh for leaving Egypt before his

---

[1]For example, after Saleh explained how he allowed the former prisoner into his home because he believed it was his obligation as a Christian and because he and his wife believed that people should be forgiven, Judge Garcy questioned Saleh as follows:
Q. This is your wife in the courtroom. You love her, right?
A. Of course.
Q. This is your daughter behind Mr. Bassetti. You love her, right?
A. Yes.
Q. How dare you bring a stranger into your house without knowing what the crime was that the lady had committed. Why--how could you do that? A.R. 203.

wife and child, sarcastically calling his actions "heroic." Id. We cannot condone open

hostility toward a petitioner for asylum simply on the basis of disbelieved testimony.

This is not the first time we have felt it necessary to remark on Judge Garcy's

behavior. See Wang v. Gonzales, 423 F.3d 260 (3d Cir. 2005). While we do not believe

that the Judge's conduct in this case warrants a rejection of her adverse credibility

determination, we counsel Judge Garcy specifically, and immigration judges generally, to

heed our message in Abdulrahman and conduct themselves in a manner befitting a neutral

and detached federal judge. 330 F.3d at 596.

Although we disagree with the manner in which Judge Garcy conducted herself in

these proceedings, we note that our view of the record as a whole finds substantial

evidence to support the adverse credibility determination. We have previously affirmed

such determinations in the face of "problematic" statements by an immigration judge and

will do so again here. Abdulrahman, 330 F.3d at 597-99.

## IV. Conclusion

For the foregoing reasons we will deny the petition to review the decision of the

Board of Immigration Appeals.